UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNIQUE SHOPPING NETWORK, LLC,   )
 )
          Plaintiff,   )
 )
v.   )   No.:   3:10-CV-428
 )         (VARLAN/GUYTON)
UNITED BANK CARD, INC.,   )
 )
          Defendant.   )

## MEMORANDUM OPINION

This civil action is before the Court on UBC United Bank Card, Inc.'s ("UBC")
Motion to Dismiss [Doc. 19], in which UBC moves for dismissal of plaintiff Unique
Shopping Network, LLC's amended complaint, pursuant to Rule 12(b)(6) or Rule 12(b)(3)
of the Federal Rules of Civil Procedure. Plaintiff has responded in opposition [Doc. 22], and
UBC has filed a reply [Doc. 24]. The matter is ripe for determination.

For the reasons set forth herein, UBC's motion to dismiss will be granted.

## I.    Relevant Facts

Plaintiff is a company engaged in the televised promotion and sale of items to home
shoppers, including, but not limited to, collectible silver and gold coins [Doc. 18, ¶ 4].
Plaintiff requires the services of credit card processors or vendors to process sales
transactions, collect funds, and distribute sale proceeds back to plaintiff [*Id.*, ¶ 6]. UBC is
a credit card vendor [*Id.*, ¶ 9].

Around March 2010, plaintiff sought UBC's services to process credit card payments for orders of plaintiff's products [*Id.*]. Plaintiff completed a merchant application which plaintiff executed and submitted to UBC on March 25, 2010 [Doc. 1-1, p. 2]. In the application, plaintiff is designated the "merchant" and First National Bank of Omaha ("FNBO") is designated the "member bank" or "acquirer" [*Id.*]. The merchant application states that the responsibilities listed in the application "do not supercede the terms of the Merchant Agreement" [*Id.*, p. 2]. The merchant application also specifically states, above the executed signature line, that the signatories to the application acknowledge receipt of the terms and conditions:

> BY THEIR EXECUTION BELOW, THE UNDERSIGNED AGREE TO ABIDE BY THE MERCHANT TRANSACTION PROCESSING AGREEMENT ("THE AGREEMENT"). THE AGREEMENT CONSISTS OF THE MERCHANT APPLICATION, THE TERMS AND CONDITIONS (A SEPARATE ATTACHMENT HERETO), AND MERCHANT ACKNOWLEDGES RECEIPT OF THE TERMS AND CONDITIONS AT THE TIME OF SIGNING[.]

[*Id.*, p. 6 (capitalization in original)].

On April 5, 2010, plaintiff received and executed a merchant reserve acknowledgment which provides that "[t]his will acknowledge that as a condition of approval or continuance of the Merchant's . . . credit card processing account, [UBC] and its agents, including its processing bank, have the authority to establish a reserve in accordance with the terms and conditions of the Merchant Processing Agreement[.]" [Doc. 1-2]. This document also states that plaintiff acknowledges that "if there is any conflict between the terms and conditions of the Merchant Processing Agreement, the terms of the Merchant Processing Agreement will

govern." [*Id.*]. Plaintiff asserts that UBC did not provide plaintiff a merchant processing agreement on April 5, 2010 [Doc. 18, ¶ 19].

On April 7, 2010, UBC postmarked to plaintiff a package containing an undated approval letter for plaintiff's merchant application [Doc. 1-3], a 77-page terms and conditions booklet [Doc. 1-4], and a payment processing manual [Doc. 1-4]. The terms and conditions booklet contains two forum selection clauses. The first clause, in Section 13.2, pertains to plaintiff and FNBO and designates the State of Nebraska as the forum for any litigation between plaintiff and FNBO [Doc. 1-4, p. 9]. The second clause, in a section entitled "Addendum to Merchant Transaction Processing Agreement," pertains to plaintiff and UBC and designates the State of New Jersey as the forum for any litigation solely between plaintiff and UBC [*Id.*, p. 57]. The Addendum also contains language that amends, in part, the first clause of Section 13.2 [*Id.*].

UBC began processing transactions for plaintiff on April 15, 2010 [Doc. 18, ¶ 29]. Plaintiff asserts that it received the above-described package "sometime during the week of April 12, 2010" and it is believed by plaintiff that such receipt was after UBC began processing transactions on April 15, 2010 [*Id.*, ¶ 27]. After April 15, plaintiff asserts that UBC processed two more transactions for plaintiff, one on April 22, 2010, and one on April 29, 2010 [*Id.*, ¶ 29].

Plaintiff asserts that after April 29, 2010, UBC did not distribute any funds to plaintiff and did not call or otherwise advise plaintiff as to why funds had not been released [*Id.*, ¶ 31]. On or about May 5, 2010, plaintiff asserts that it was advised by UBC that plaintiff's

account had been canceled and that all funds were being held for 180 days [*Id.*, ¶ 32]. Thereafter, plaintiff asserts that it received a letter from UBC stating that plaintiff's business did not conform to UBC's underwriting guidelines and therefore UBC was immediately terminating plaintiff's credit card processing account [*Id.*, ¶ 33]. Plaintiff asserts that UBC advised plaintiff that it was necessary to withhold funds because plaintiff was "charging customers prior to delivering the product." [*Id.*, ¶ 37]. Following these events, disagreements arose between the parties regarding their respective obligations. It is out of these disagreements that plaintiff's claims arise.

In October 2010, plaintiff filed the complaint [Doc. 1], followed by an amended complaint [Doc. 18], alleging fraud, fraud in the inducement, a violation of the Tennessee Consumer Protection Act (the "TCPA") Tenn. Code Ann. §§ 47-18-101, *et seq.*, negligent misrepresentation, breach of contract, promissory fraud, promissory estoppel, and breach of the covenant of good faith and fair dealing [*Id.*]. Plaintiff's claims arise out of the agreement between the parties and the parties' actions taken pursuant to that agreement [*Id.*]. UBC filed the motion to dismiss, pursuant to Rule 12(b)(6) and Rule 12(b)(3), contending that dismissal of the amended complaint is appropriate because the terms and conditions to the parties' agreement contains an enforceable forum selection clause requiring "any dispute regarding, arising out of or relating to" the parties' agreement and solely between UBC and plaintiff to be brought in the courts of the State of New Jersey. Because plaintiff's claims are solely against UBC, UBC contends that plaintiff is required to comply with the forum selection clause and bring its claims in a state court in New Jersey, specifically, in Hunterdon County.

Plaintiff opposes the motion, arguing that UBC did not timely or sufficiently communicate the forum selection clause to plaintiff and thus, the clause should be found unenforceable. Plaintiff also contends that the forum selection clause is part of a contract of adhesion and that the language of the clause is patently ambiguous and renders it unenforceable. Last, plaintiff argues that UBC obtained the forum selection clause by overreaching and as a result of superior bargaining power.

## II.     Analysis

### A.     Motion to Dismiss for Improper Venue – Standard of Review

UBC submits that the appropriate analysis for this motion alleging improper venue in a diversity case due to the existence of a forum selection clause designating a non-federal venue is found in *Hasler Aviation, LLC v. Aircenter, Inc.*, Case No. 1:06-CV-180, 2007 WL 2463283 (E.D. Tenn. Aug. 27, 2007), in which the district court followed the analysis of *M/S Bremen v. Zapata Off-Shore Co.* ("*Bremen*"). 407 U.S. 1, 12-15 (1972) (analyzing a similar motion as a motion to specifically enforce a forum selection clause).[1]  Plaintiff appears to agree [Doc. 22, p. 13 ("The enforceability of forum selection clauses is controlled by [*Bremen*].")].  Upon the Court's review of *Hasler*, *Bremen*, and the facts of this case, the

_____

[1]In *Hasler*, a case with a similar procedural posture and a similar non-federal forum selection clause, the district court initially found the proper standard of review for the motion to dismiss to be "not clear." *Hasler*, 2007 WL 2463283, at *2-*3.  However, after considering the applicable law, including *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531 (6th Cir. 2002), and the positions taken by other district courts in this Circuit and others, the district court concluded that the appropriate analysis was under *Bremen*. *Id.* at *3-*4.  To cover all bases, however, the district court also analyzed the motion under a motion to transfer/forum non conviens analysis. *Id.* at *4-*5.  This Court will do the same.  *See infra.*

Court agrees that the *Bremen* analysis of the enforceability of a forum selection clause is also the appropriate analysis for this motion.

Under *Bremen*, "[t]he Court begins by assuming the forum selection clause[] is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances[.]" *Hasler*, 2007 WL 2463283, at *4 (citing *Bremen*, 407 U.S. at 10); *see also Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999) ("Forum selection clauses generally are enforced by modern courts unless enforcement is shown to be unfair or unreasonable."). "Unless the forum selection clause itself was obtained by fraud, undue influence, or overweening bargaining power, it should be given full effect." *Hasler*, 2007 WL 2463283, at *4 (citing *Bremen*, 407 U.S. at 12-13); *see also Sec. Watch*, 176 F.3d at 375 (citing Restatement (2d) of Conflict of Laws § 80). The presumptive validity of a forum selection clause can be overcome if a party can show either that (1) trial in the contractual forum would be so gravely difficult and inconvenient that the party will for all practical purposes be deprived of its day in court or (2) enforcement would contravene a strong public policy of the forum state. *Bremen*, 407 U.S. at 18, 15. If one seeks to invalidate a forum selection clause by allegations of fraud, there must have been fraud or coercion in the inducement of the clause itself, standing apart from the rest of the agreement. *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir.), *cert. denied*, 502 U.S. 821 (1991). The party challenging the forum selection clause bears the burden of demonstrating that the enforcement of the forum selection clause is unfair or unreasonable. *Hasler*, 2007 WL 2463283, at *4 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988)).

The rules of law identified in *Hasler* are consistent with the U.S. Court of Appeals for the Sixth Circuit's recitation of the law governing the enforceability of forum selection clauses. In *Wong v. PartyGaming Ltd.*, 589 F.3d 821 (6th Cir. 2009), the Sixth Circuit held that, in diversity suits, "the enforceability of [] forum selection clause[s] is governed by federal law." and, under that law, "a forum selection clause should be upheld absent a strong showing that it should be set aside." *Id.* at 828. When evaluating enforceability, courts should look to the following factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* (citing *Sec. Watch*, 176 F.3d at 375). The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced. *Id.*

**B.** ***Bremen* Analysis**

The Court begins by assuming that the forum selection clause at issue is prima facie valid and that it will be enforced absent a showing of unreasonableness. *See Bremen*, 407 U.S. at 10. The Court also notes the Tennessee Supreme Court's directive that Tennessee courts should enforce forum selection clauses unless the party opposing the clause meets its burden of demonstrating that to do so would be unfair and inequitable. *See Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*, 650 S.W.2d 378, 380 (Tenn. 1983). Thus, assuming enforceability, the Court now turns to plaintiff's arguments as to why the forum selection clause at issue is unfair or unreasonable, ambiguous, and a product of overreaching.

7

### 1.    Timeliness

Plaintiff argues that UBC did not timely or sufficiently communicate the forum selection clause to plaintiff because the terms and conditions were not received until after approval of the merchant application, after execution of the merchant reserve application, and after processing began on April 15, 2010.  Plaintiff contends that the merchant application and the merchant reserve acknowledgment did not contain language advising plaintiff that by executing those documents, plaintiff was agreeing to the forum selection clause and agreeing that all litigation would have to be pursued in a designated forum.

The Court disagrees.  The Court first presumes that on March 25, 2010, prior to executing the merchant application, plaintiff read the application and its disclosure of the terms and conditions.  Second, the Court notes that plaintiff did in fact execute the merchant application, acknowledged that its terms would not supersede the terms of the merchant agreement, and acknowledged, "at the time of signing," plaintiff's "receipt of the terms and conditions" [Doc. 1-1].  This indicates to the Court that plaintiff either received the terms and conditions or signed the application to that effect, thus making the decision to engage in the application process with UBC without a review of the attendant terms and conditions.  Third, assuming plaintiff did not receive a copy of the terms and conditions on March 25, 2010, the merchant application plainly discloses the existence of the terms and conditions and the merchant agreement.  In addition, the merchant reserve agreement, executed by plaintiff on April 5, 2010, also references the merchant agreement [Doc. 1-2].

Given these disclosures, the references to the terms and conditions and the merchant agreement in the merchant application and the merchant reserve acknowledgment, and in light of the fact that this case involves a business agreement between two commercial entities, the Court does not find that plaintiff could not have anticipated that it could be subject to a forum selection clause. Moreover, it does not follow that because plaintiff elected to begin taking payments for UBC to process, without reading and considering the scope of the merchant agreement and the attendant terms and conditions, that plaintiff should not therefore be bound by the provisions of those documents. *See, e.g., Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007) (stating that a party is presumed to know the contents of a contract he has signed and that signing a contract "without learning such information is at the party's own peril."). Plaintiff has also noted that the approval process relating to the parties' agreement took approximately three weeks to complete. The Court has no reason to conclude that three weeks is an insufficient time for plaintiff to have reviewed the details of the parties' agreement or have requested that UBC provide plaintiff with the relevant documents, the existence of which were disclosed to plaintiff on March 25, 2010.

### 2. Contract of Adhesion and Ambiguous Language

Plaintiff also argues that the forum selection clause was part of a contract of adhesion because the documents making up the parties' agreements were known only to UBC, the terms were nonnegotiable, and the terms and conditions contained patently ambiguous language susceptible to several meanings.

In *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996), the Tennessee Supreme Court defined an adhesion contract as a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to form of the contract." *Id.* at 320. A conclusion that contracts are contracts of adhesion, however, is not determinative of the contract's enforceability. *Id.* Rather, enforceability "generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* Unless there is a showing that the alleged fraud or misrepresentation induced the party opposing the forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to an entire contract does not affect the validity of a forum selection clause within that contract. *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (quoting *Moses*, 929 F.2d at 1138).

Given this standard, the Court disagrees that the agreement between the parties constitutes a contract of adhesion or that the forum selection clause itself is patently ambiguous and should be deemed unenforceable. As noted above, the existence of the merchant agreement and the terms and conditions were disclosed and acknowledged by plaintiff on March 25, 2010 and the approval process continued for about three weeks. This three week period, the disclosure of the terms and conditions, and the lack of any other allegation of fraud or misrepresentation, does not indicate that plaintiff had no choice but to

acquiesce to UBC's choice of the form of the agreement without a realistic opportunity to bargain for services plaintiff could not have otherwise have obtained.

The Court also disagrees with plaintiff's arguments that the language of Section 13.2 and the Addendum is patently ambiguous and should be deemed unenforceable. Whether contractual terms are ambiguous is a question of law for the court. *Tennessee Consol. Coal Co. v. United Mine Wkrs. of Am.*, 416 F.2d 1192, 1198 (6th Cir. 1969), *cert. denied*, 397 U.S. 964 (1970). The language of a contract is ambiguous if its meaning is susceptible to more than one reasonable interpretation. *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). When the agreement is unambiguous, the meaning is a question of law, and the court must enforce the agreement according to its plain terms. *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). The language used in a contract must also be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). Courts are not "at liberty to relieve parties from their contractual obligations simply because these obligations later proved to be burdensome or unwise." *Hillsboro Plaza Enterprises v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993) (citations omitted).

Here, the terms and conditions contain two forum selection clauses. The first forum selection clause, pertaining to FNBO and plaintiff, referred to as "MERCHANT," states as follows:

> 13.2 <u>Governing Law and Forum</u>.   MERCHANT and FNBO acknowledge and agree that this AGREEMENT and the Guaranty contained herein was, and shall be deemed to have been, made and

delivered in Douglas County, Nebraska. The laws of the State of Nebraska . . . shall govern all matters (whether in contract, statute, tort, or however characterized) arising out of or relating to this AGREEMENT and the Guaranty contained herein, including, without limitation, the validity, interpretation, construction, performance and enforcement of the AGREEMENT and Guaranty. The PARTIES agree that, in the event of any dispute regarding, arising out of or relating to this AGREEMENT or the Guaranty contained herein, the courts of the State of Nebraska shall have and be vested with personal jurisdiction over the PARTIES. The PARTIES further agree that any and all actions, claims, suits or proceedings arising out of or relating (directly or indirectly) to this AGREEMENT or Guaranty contained herein shall be filed and litigated only in courts located in Douglas County, Nebraska, and such courts shall have jurisdiction over any action, claim, suit or proceeding arising out of or relating (directly or indirectly) to this AGREEMENT or the Guaranty contained herein. If MERCHANT brings legal action against FNBO for any reason, MERCHANT shall commence the action within one (1) year of the date the error or the incident giving rise to such action occurred.

[Doc. 1-4, p. 9]. The second forum selection clause, pertaining to UBC and plaintiff, referred to again as "MERCHANT," states as follows:

The PARTIES agree to delete the third sentence of Section 13.2 of the AGREEMENT and replace it in its entirety with the following:

"If MERCHANT brings legal action against FNBO or UBC for any reason, MERCHANT shall commence the action within one (1) year of the date the error or the incident giving rise to such action occurred."

The PARTIES agree to add the following to the end of Section 13.2:

"If the dispute is solely between MERCHANT and UBC the laws of the State of New Jersey . . . shall govern all matters (whether in contract, statute, tort, or however characterized) arising out of or relating to this AGREEMENT and the Guaranty contained herein, including, without limitation, the validity, interpretation, construction, performance and enforcement of the AGREEMENT and Guaranty. The PARTIES agree that, in the event of any dispute regarding, arising out of or relating to this AGREEMENT or the Guaranty contained herein, the courts of the

12

State of New Jersey shall have and be vested with personal jurisdiction over the PARTIES. The PARTIES further agree that any and all actions, claims, suits, or proceedings arising out of or relating (directly or indirectly) to this AGREEMENT or the Guaranty contained herein and solely between UBC and MERCHANT shall be filed and litigated only in courts located in Hunterdon County, New Jersey, and such courts shall have jurisdiction over any action, claim, suit or proceeding arising out of or relating (directly or indirectly) to this AGREEMENT or the Guaranty contained herein."

[*Id.*, p. 57].

As shown above, the first forum selection clause pertains to disputes as arising between plaintiff and FNBO and provides that disputes between those parties shall be filed and litigated in the courts of the State of Nebraska [*Id.*, p. 9]. The language preceding the second forum selection clause states that the parties "agree to delete" and replace the third sentence of Section 13.2 and "agree to add" the second clause to the end of Section 13.2—after the first clause pertaining to disputes arising between FNBO and plaintiff [*Id.*, p. 57]. The second forum selection clause pertains to disputes arising solely between plaintiff and UBC and states that disputes solely between these parties shall be filed and litigated in the courts of the State of New Jersey [*Id.*].

The Court does not find these clauses to be ambiguous or susceptible to more than one reasonable interpretation. The plain language of the Addendum states that the second forum selection clause pertaining to disputes solely between plaintiff and UBC is to be inserted after the first forum selection clause pertaining to disputes between plaintiff and FNBO. There is no language indicating that the first clause is to be replaced in its entirety. Rather, the plain language of the Addendum expressly states that the second forum selection clause is

to be inserted following the first forum selection clause. The Addendum also plainly pertains *solely* to disputes between plaintiff and UBC—a category which encompasses plaintiff's claims in the amended complaint. Furthermore, the second forum selection clause contains no mention of FNBO or courts of the State of Nebraska and unequivocally provides that "[i]f the dispute is solely between MERCHANT and UBC the laws of the State of New Jersey . . . shall govern all matters." [Doc. 1-4, p. 57]. Finally, the Court does not find the final sentence of the second forum selection clause to be ambiguous as a matter of law. This sentence identifies the county in New Jersey where litigation "solely between UBC and MERCHANT" shall be filed and litigated. Courts in this Circuit and in other circuits have found similar language to be unambiguous. *See Sec. Watch, Inc.*, 176 F.3d at 374; *Hasler*, 2007 WL 2463283, at *6 -*7; *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997). The Court also does not find the terms "MERCHANT," "AGREEMENT," "UBC," "FNBO," or "PARTIES," to be ambiguous or susceptible to more than one interpretation. Both "AGREEMENT" and "PARTIES" are defined in the preamble to the terms and conditions[2] and the terms "MERCHANT," "FNBO," and "UBC," are self-explanatory and are used in the merchant application, the merchant reserve acknowledge, the terms and conditions, and the parties' briefs.

---

[2]"This Merchant Transaction Processing Agreement (together with its addenda, attachments, and schedules shall be hereinafter known as the "AGREEMENT"), is by and among the parties in the Merchant Application (the "PARTIES")." [Doc. 1-4, p. 3].

### 3. Overreaching and Superior Bargaining Power

Plaintiff also argues that the forum selection clause was the product of overreaching because UBC had superior bargaining power. Plaintiff contends that there was nothing to give plaintiff notice that litigation must be pursued pursuant to a forum selection clause until after the three week approval period and nothing to give plaintiff notice that terminating the merchant agreement would result in heavy losses to plaintiff. Plaintiff also points to its status as a four-member company with a single location, versus UBC's status as one of the nation's largest payment processors.

The Court disagrees that the forum clause was a product of overreaching or an unconscionable bargain. Tennessee courts have held that the presence of a forum selection clause in agreements is not, by itself, oppressive or unconscionable. *Woodruff v. Anastasia Int'l, Inc.*, No. E2007-00874-COA-R3-CV, 2007 WL 4439677, at *5 (Tenn. Ct. App. Dec. 19, 2007). *See also Jenkins v. Marvel*, 683 F. Supp. 2d 626, 637 (E.D. Tenn. 2010) (citing *Woodruff* favorably and finding the forum selection clause in *Jenkins* not to be unreasonable or fundamentally unfair). Plaintiff had notice of the terms and conditions and acknowledged receipt of those terms and conditions on March 25, 2010. Moreover, plaintiff's signing of the merchant application, acknowledgment of the terms and conditions, agreement to be bound by the merchant agreement, and choice to begin engaging in transactions prior to reviewing the merchant agreement, constitutes a business decision made by plaintiff at its own peril, not an indication of overreaching by UBC. Also, while plaintiff has asserted that UBC's actions were unconscionable, the Court does not find that the circumstances

15

surrounding plaintiff's agreement to the forum selection clause to be actions indicative of either a substantively or a procedurally unconscionable bargain or of an inequality that shocks the judgment of a person of common sense. *See Trinity Indus., Inc. v. McKinnon Bridge, Co.*, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001). In addition, while UBC may be a larger corporate entity than UBC, the Court has no other indication, beyond the respective sizes of the parties, that each was not a commercial entity with the business experience and acumen to engage in a commercial transaction involving a forum selection clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 ("[I]t is reasonable to expect that a corporation that has customers in many states may want to limit where it is subject to suit."). There is no indication that the parties' agreement was not at arms length, no indication that the parties and their respective counsels did not have sufficient to time review the documents, and no indication that UBC refused to allow plaintiff access to copies of the terms and conditions or the merchant agreement prior to the beginning of transaction processing.

Finally, the cases cited by plaintiff in which the courts found overreaching on the part of the party seeking to enforce the forum selection clause are distinguishable from the facts and circumstances of this case. Plaintiff contends that this case is analogous to *Preferred Capital, Inc. v. Sarasota Kennel Club* because the forum selection clause in *Preferred* was not disclosed to the parties until after execution of a final agreement. No. 1:04-CV-2063, 2005 WL 1799900 (N.D. Ohio, July 27, 2005). Plaintiff also contends that *Buckeye Check Cashing of Arizona, Inc. v. Lang* is analogous to this case because the employer, the party

seeking to enforce the forum selection clause in that case, did not inform or ask the party to be enforced, the employees, of the agreement containing the clause until after the employees had resigned from their employment. No. 2:06-CV-792, 2007 WL 641824 (S.D. Ohio Feb. 23, 2007). In both *Preferred* and *Buckeye*, however, the courts found that the parties to be bound were deprived of the opportunity to negotiate or object to the forum selection clause prior to signing the agreements containing those clauses. In this case, on the other hand, plaintiff acknowledged, at the time of signing the merchant application, that it would be bound by the merchant agreement and the terms and conditions—yet plaintiff did not request copies of those documents. Further, plaintiff had at least three weeks to obtain and review said documents.

### 4. Whether a New Jersey Forum Would Deprive Plaintiff of its Day in Court

Plaintiff has not argued that the courts of the State of New Jersey would ineffectively or unfairly handle this suit or that litigating this suit in those courts would deprive plaintiff of its day in court. Accordingly, these prongs, present under both the *Bremen* and the *Wong* analysis, have not been satisfied.

### 5. Whether Enforcing the Clause Would Violate Tennessee Public Policy

Plaintiff also asserts that the forum selection clause would be a violation of Tennessee public policy. Plaintiff contends that the totality of the circumstances surrounding UBC's actions in obtaining the merchant agreement and the forum selection clause demonstrate

unconscionability under the fairness and public policy factors outlined by the Tennessee Supreme Court in *Dyersburg Mach. Works* and under federal law.

As noted in *Bremen*, if enforcement of a forum selection clause "would contravene a strong public policy of the forum in which the suit is brought," 407 U.S. at 15, the Court should decline to enforce it. In *Dyersburg Mach. Works*, the Tennessee Supreme Court stated that, while forum selection clauses have "traditionally been held to be unenforceable[,] . . . . the more recent decisions hold that the validity or invalidity of such forum selection clauses depends upon whether they are fair and reasonable in light of all the surrounding circumstances attending their origin and application." *Id.* at 380 (citing *Bremen* and other federal cases approvingly). The Tennessee Supreme Court has also noted that in considering forum selection clauses, Tennessee courts should consider factors which "bear upon the fundamental fairness of enforcing such a forum selection clause, and should enforce such a clause unless the party opposing enforcement demonstrates that it would be unfair and inequitable to do so." *Id. See also Waldman v. Palomar Med. Techs., Inc.*, No. 1:08-cv-39, 2008 WL 4415582, at *6 (E.D. Tenn. Sept. 24, 2008) ("Tennessee follows the modern rule and considers forum selection clauses prima facie valid.").

Considering this directive from the Tennessee Supreme Court and the circumstances of this case considered above, the Court does not find the circumstances surrounding the agreements and UBC's obtaining of plaintiff's agreement to the forum selection clause to be unfair or inequitable because plaintiff has not shown that its agreement to the forum selection

clause was obtained by duress, abuse of power, or unconscionable means. The Court also has no information that plaintiff could not secure effective relief in courts of the State of New Jersey and plaintiff has not shown that a trial in the State of New Jersey would be substantially inconvenient. Finally, the Court can discern no other reason why it would be unfair or unreasonable to enforce the agreement.

### C. Motion to Transfer/Forum Non Conviens Analysis Under 28 U.S.C. § 1404

The Court will also address UBC's motion under 28 U.S.C. § 1404(a) and forum non conviens, which utilize the same test. *Hasler*, 2007 WL 2463283, at *4. *See Kerobo*, 285 F.3d at 535 (stating that venue in a case removed from state court "is governed solely by § 1441(a) and should be dealt with via a motion to transfer pursuant to § 1404(a)).[3] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In making the transfer determination, the Court must decide: whether the action could have been brought in the proposed transferee division; (2) whether a transfer would promote the interests of justice; and (3) whether a transfer would serve the parties' and the witnesses' convenience. *IFL Group, Inc. v. World Wide Flight Servs.*, 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004). *See also Moore v. Rohm*

---

[3]This case is not directly analogous to *Kerobo* because the Court is not considering a case removed from state court or a motion to transfer. Rather, this case deals with a contract that provides for a non-federal, non-transferable forum—the forum selection clause designating the courts of the State of New Jersey.

& *Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) ("In ruling on a motion to transfer under

§ 1404(a), a district court should consider the private interest of the parties, including their

convenience and the convenience of potential witnesses," along with "public-interest

concerns, such as systemic integrity and fairness, which come under the rubric of 'interests

of justice'") (quoting *Moses*, 929 F.2d at 1137).

While one of the Court's considerations under the § 1404(a) analysis is that the

plaintiff's choice of forum is given substantial weight and accorded some deference—such

a choice is not dispositive. This is particularly so when, as here, there is a forum selection

clause in an agreement between commercial parties. As stated above, because a forum

selection clause is presumed to be prima facie valid, plaintiff must show that enforcement of

the clause would be "unfair, unjust, or unreasonable, or that the contract forum selection

clause is invalid due to fraud, duress, or overreaching." *Inghram v. Universal Indus. Gases,*

*Inc.*, No. 1:05-CV-19, 2006 WL 306650 (E.D. Tenn. Feb. 8, 2006) (quoting *Bremen*, 407

U.S. at 10). Because the Court has found, *supra*, that the forum selection clause in this case

was not unfair, ambiguous, or a result of overreaching, the Court will now inquire as to

whether the private interests of the parties and public interest concerns indicate that the

forum selection clause should not be enforced.

Upon review of the transfer factors, the Court finds that these factors do not lead to

the conclusion that the forum selection clause in this case should not be enforced. The claims

in the amended complaint arise out of the documents relating to the agreement between the

parties, including the merchant application, the merchant agreement, and the terms and conditions. The forum selection clause at issue also appears to apply equally to all plaintiff's claims, whether sounding in contract, tort, or under the TCPA. *See, e.g., Hasler*, 2007 WL 2463283, at *5 (finding that the forum selection clause in that case applied to the plaintiff's claims sounding in contract, tort, and arising under the Tennessee Consumer Fraud Act and that the phrase "related to" in the forum selection clause covers tort and consumer protection claims related to the purpose of the contract between the parties). In addition, the Court has found that plaintiff has not met its burden of proving that the forum selection clause was obtained by overreaching, that it was part of a contract of adhesion, or that the clause was obtained by fraud.

In regard to the convenience of the parties, of potential witnesses, and of the ease of accessing proof, the claims in the amended complaint arise out of the documents making up the parties' agreements, and the Court has no allegation before it that the necessary evidence, witnesses, or proof would not be easily transferrable. Furthermore, UBC has noted that its witnesses are located in New Jersey and plaintiff has not argued that the inconvenience of having its witnesses travel to New Jersey renders litigating this case in New Jersey fundamentally unfair. Finally, the Court has nothing before it that would led it to conclude that litigating this case in New Jersey would have an adverse impact on fairness or the interests of justice.

**III.    Conclusion**

For the reasons given above, UBC's motion to dismiss [Doc. 19] will be **GRANTED** and plaintiff's amended complaint will be **DISMISSED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE